**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**KALEB FOWLER**                                    **CASE NO.  3:23-CV-01525**

**VERSUS**                                          **JUDGE TERRY A. DOUGHTY**

**WESTROCK CP L L C ET AL**          **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 42] filed by Defendant, H&M Construction Company, LLC, ("H&M"). Plaintiff, Kaleb Fowler ("Fowler"), opposes the Motion [Doc. No. 44]. H&M filed a reply [Doc. No. 45].

For the following reasons, the Motion is **GRANTED**.

## I.    Background

This is a worksite injury case, arising from an incident that occurred on December 17, 2021.[1] At the time, Waste Connections of Louisiana, Inc., ("Waste Connections") employed Fowler.[2] Waste Connections contracted with WestRock CP, LLC, ("WestRock") to clean WestRock's dumpsters at WestRock's paper mill in Hodge, Louisiana.[3] WestRock also hired H&M to clean the paper mill's grounds.[4]

On the day in question, Fowler was attaching cables to a dumpster at the mill, so the dumpster could be loaded onto a truck.[5] He stepped into mud and water, causing him to slip and fall and, as a result, allegedly injured his knee and leg.[6]

---

[1] [Doc. No. 1, ¶ 4].
[2] [Id. at ¶ 5].
[3] [Id. at ¶¶ 4–5].
[4] [Id. at ¶ 6].
[5] [Id. at ¶ 4].
[6] [Id.]; [Doc. No. 1-1, p. 6].

Fowler sued WestRock and H&M, claiming they caused his injury.[7] Fowler alleges H&M and WestRock negligently hired, trained, and supervised its employees; negligently created unreasonably unsafe conditions; and negligently monitored its premises.[8] H&M filed this Motion, arguing all claims against it should be dismissed.[9]

The parties briefed all relevant issues, and the matter is ripe.

## II.    Law and Analysis

### A.    Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

---

[7] [Doc. No. 1, p. 1].
[8] [Id. at ¶¶ 7–9].
[9] [Doc. No. 42].

Page **2** of **13**

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249 (1986) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In this diversity suit, the forum state, i.e., Louisiana's substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### B.      Rule 56(c)(2) Evidentiary Objections

Before turning to the merits, the Court notes Fowler objects to several materials H&M used in its Motion. Fowler argues that H&M's two cited affidavits—

affidavit of Janie Ferguson ("Ferguson")[10] and affidavit of Billy Nelson ("Nelson")[11]—are impermissible because they are conclusory and unsupported.[12] Fowler also argues two other exhibits—the Master Construction Agreement[13] ("MCA") and the Environmental Services Agreement[14] ("ESA")—are impermissible because they cannot be authenticated.[15] The Court disagrees with both arguments.

### 1.    The Affidavits are Substantiated and not Conclusory

"[A]ffidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Orthopedic & Sports Inj. Clinic v. Wang Lab'ys, Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985)). But courts may rely on, at the summary judgment stage, affidavits "made on personal knowledge, setting out facts that would be admissible in evidence, and showing that the affiant or declarant is competent to testify on the matters stated." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (citation modified). "And these facts must be particularized, not vague or conclusory." *Id.* (citation omitted). "[W]hile an affidavit certainly *can* explicitly state that it is based on 'personal knowledge,' there is no requirement for a set of magic words." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (footnote omitted). The affidavits of Ferguson and Nelson satisfy the above requirements.

---

[10] [Doc. No. 42-6].
[11] [Doc. No. 42-10].
[12] [Doc. No. 44, pp. 2–3].
[13] [Doc. No. 42-7].
[14] [Doc. No. 42-11].
[15] [Doc. No. 44, p. 3].

The first affidavit is Ferguson's. It states H&M employed Ferguson as the paper mill worksite's "Site Administrator" since October 2012.[16] In this role, Ferguson managed H&M's construction office at the paper mill and had business records of H&M's work performed at the paper mill.[17] Among these records, is the MCA, which outlined H&M's responsibilities at the worksite at the time, and other invoices to WestRock for work H&M performed.[18] Relying on these records, Ferguson states that H&M does not have any records indicating that WestRock requested H&M to perform any periodic work, before December 2021, near the dumpster storage area.[19] Rather, he states, the only invoices are for work performed H&M performed at the dumpster storage area after December 2021.[20] These are not conclusory statements, but merely factual assertions. These facts are, furthermore, based on personal information and supported by other records. As such, Ferguson's affidavit is permissible, and the Court will rely on it.

Next, is Nelson's affidavit. H&M employed him too, as a "Supervisor" at the paper mill worksite, since October 2012.[21] And like Ferguson, Nelson also managed H&M's operations at the paper mill and knew about the MCA, which outlined H&M's duties and responsibilities at the paper mill.[22] Nelson testified that pre-December 2021, H&M only performed occasional clean-up at the dumpster area.[23] Only after

---

[16] [Doc. No. 42-6, ¶ 1].
[17] [Id. at ¶ 2].
[18] [Id.].
[19] [Id. at ¶ 3].
[20] [Id. at ¶ 4].
[21] [Doc. No. 42-10, ¶ 1].
[22] [Id. at ¶ 2].
[23] [Id. at ¶ 3].

December 2021, did WestRock ask for—and H&M's subcontractor perform—levelling and filling of the dumpster area.[24] Again like Ferguson, Nelson's statements are not conclusory, but factual recounts of matters that Nelson personally knew in his role as H&M's supervisor. True, that unlike Ferguson, Nelson's affidavit does not explicitly state it is based on personal knowledge. But as the Fifth Circuit held those "magic words" are not necessary, and contextual cues—Nelson's role and his length of service—suggests he had personal knowledge of the items he recounts. *DIRECTV*, 420 F.3d at 530. Therefore, Nelson's affidavit is also permissible, and the Court will rely on it as well.

### 2. The MCA and the ECA Could be Admitted at Trial

"At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (citing Fed. R. Civ. P. 56(c)). "After a 2010 revision to Rule 56, materials cited to support or dispute a fact need only be *capable* of being presented in a form that would be admissible in evidence." *Id.* (citation omitted); *see also* Fed. R. Civ. P. 56 2010 advisory committee note. The MCA and the ECA satisfy this test.

Both Ferguson's and Nelson's affidavits mentioned the MCA.[25] Thus, as H&M points out, either Ferguson or Nelson can be called, at trial, to authenticate and admit the MCA.[26] As such, the MCA is "capable of being presented," at trial, in an admissible form, and, therefore, may be used at this stage. *Maurer*, 870 F.3d at 384.

---

[24] [Id.].
[25] [Doc. No. 42-6, ¶ 2]; [Doc. No. 42-10, ¶ 2].
[26] [Doc. No. 45, p. 5].

Similarly, WestRock provided H&M the ECA as part of this suit's "Initial Disclosures."[27] And, as H&M avers, the Court has no reason to doubt why H&M cannot call a WestRock employee to the stand, at trial, to authenticate the ECA.[28] As such, the ECA too is "capable of being presented," at trial, in an admissible form, and, therefore, the Court may use it in resolving H&M's Motion for Summary Judgment. *Maurer*, 870 F.3d at 384.

### C.    Merits

#### 1.    Negligent Hiring, Training, and Supervising Claim

Louisiana law recognizes the tort of negligent hiring, training, and supervising of an employee by an employer. *Pelitire v. Rinker*, 270 So. 3d 817, 837 (La. Ct. App. 2019), *writ denied*, 279 So. 3d 378 (La. 2019). Louisiana's general duty-risk analysis governs this tort, so "the plaintiff bears the burden of proving each of five separate elements: duty, breach of duty, cause-in-fact, scope of liability or scope of protection, and damages." *Id.* (citation omitted).

Louisiana has recognized that employers have a duty to "exercise reasonable care in hiring, retaining, and supervising employees." *Brown v. City of Alexandria*, No. 17-CV-0798, 2019 WL 1119578, at *4 (W.D. La. Mar. 8, 2019) (quoting *Roberts v. Benoit*, 605 So. 2d 1032, 1041 (La. 1992)). But "the majority of the Louisiana appellate courts only apply the duty of reasonable care in hiring, training, and supervision to an employer who 'hires an employee who in the performance of his duties will have a "unique opportunity" to commit a tort against a third party.'" *Id.* (collecting cases).

---

[27] [Id.].
[28] [Id.].

In *Brown*, another judge of this Court surveyed Louisiana caselaw and listed, albeit non-exhaustively, situations where Louisiana courts found employees had a "unique opportunity" to commit torts. The first category is hotel employees because they "have access to guests' hotel rooms, which are 'equivalent to a guest/visitor's home during the time the guest/visitor is staying at the hotel.'" *Id.* (quoting *Jackson v. Ferrand*, 658 So. 2d 691, 700 (La. Ct. App. 1995)). The second group is college instructors because "a college instructor maintains a position of authority over his or her students." *Id.* (citing *Harrington v. Louisiana State Bd. of Elementary & Secondary Educ.*, 714 So. 2d 845, 851 (La. Ct. App. 1998)). The third class are "employee[s] who would be working with and handling guns." *Id.* (quoting *Griffin v. Kmart Corp.*, 776 So. 2d 1226, 1231 (La. Ct. App. 2000)). Relying on these examples, the *Brown* court refused to hold theater ushers or "any job where an employee has access to patrons is one that presents a 'unique opportunity' to commit a tort." *Id.*

H&M argues *Brown* is controlling here. Specifically, H&M argues that since the work they performed at the paper mill "was limited to routine maintenance of the grounds and roads of the mill," Fowler "cannot show that H & M's work" was "of such a nature as to present its employees with a unique opportunity to cause harm to Plaintiff or others."[29] The Court agrees.

Fowler has shown nothing to suggest H&M's employees at the paper mill had "a 'unique opportunity' to commit a tort against a third party." *Id.* Nor has Fowler argued against adopting *Brown*. The Court finds *Brown* persuasive and controlling.

---

[29] [Doc. No. 42-1, pp. 13–14].

Thus, the Court holds Fowler cannot prove all the elements of his negligent hiring, training, or supervising claim, and, so, H&M's Motion is **GRANTED** for that claim.

### 2.    Unreasonably Unsafe Condition (Negligence) Claim

Fowler's complaint alleges H&M caused Fowler's injury by negligently "creating, allowing to be created, and/or encouraging to be created, the unreasonably unsafe condition and not remedying the same" at the dumpster area.[30] H&M asserts this claim fails because it, as an independent contractor, had no duty to Fowler, another independent contractor's employee.[31]

Louisiana law recognizes the tort of negligence. *See* La. Civ. Code Ann. art. 2315(A) (2025). For Fowler to prove negligence under Louisiana law, he must show that: (1) H&M's conduct was the *cause in fact* of his harm, (2) H&M owed a *duty* of care to Fowler, (3) the duty was *breached*, and (4) the risk was in the *scope* of harm afforded by the duty. *Goree v. City of Bastrop*, 763 F. Supp. 3d 772, 782 (W.D. La. 2025) (quoting *Batiste v. Theriot*, 458 F. App'x 351, 360 (5th Cir. 2012) (unpublished)). "Whether the defendant owes a duty is a threshold question and is a question of law." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 633 (La. 2006). Crucially, as the Fifth Circuit—and every federal district court in Louisiana—held "one independent contractor owed *no duty* to another independent contractor's employee where it does not employ, share a contract, or actually supervise the plaintiff." *Campbell v. Helmerich & Payne, Inc.*, 763 F. Supp. 3d 748, 756 & n.62 (M.D. La. 2025) (emphasis added) (collecting cases).

---

[30] [Doc. No. 22, ¶ 6].
[31] [Doc. No. 42-1, pp. 6–9].

H&M argues that since they did not employ, contract with, or supervise Fowler, they owed no duty to him.[32] The Court agrees.

Fowler, in his deposition, stated that he was only employed by Waste Connections when the accident occurred.[33] As such, he was not employed by H&M at that time. Fowler also testified that the two individuals he named as his supervisors, John Obed and Donnie Monroe, were Waste Connections employees.[34] And he specifically stated H&M never supervised or instructed his work, only H&M or WestRock did so.[35] Thus, H&M did not supervise Fowler. Finally, the records indicate Waste Connections was not a party to the MCA between H&M and WestRock,[36] and, likewise, H&M was not a party to the ESA between Waste Connections and WestRock.[37] Therefore, H&M and Waste Connections had no contractual relationship, and, consequently, there was none between H&M and Fowler.

Since H&M did not employ, hire on contract, or supervise Fowler, they had no duty to him. *Campbell*, 763 F. Supp. 3d at 756. The Court does not address arguments as to the other elements. "[I]f it is not necessary to decide more, it is necessary not to decide more." *PDK Lab'ys., Inc. v. United States DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment). So, Fowler's negligence claim against H&M fails, and H&M's Motion is **GRANTED** for that claim.

---

[32] [Id. at p. 9].
[33] [Doc. No. 42-5, pp. 33, 43].
[34] [Id. at pp. 39, 42].
[35] [Id. at p. 128].
[36] [Doc. No. 42-7, p. 3].
[37] [Doc. No. 42-11, p. 1].

### 3.      Premises Liability Claim

Louisiana law imputes liability on owners for harm caused by things in their custody. La. Civ. Code Ann. art. 2317 (2025). To establish premises liability under Louisiana law, Fowler must prove that: (1) the property that caused Fowler's damage was in H&M's custody; (2) the property had a vice or defect that presented an unreasonable risk of harm; (3) H&M had actual or constructive knowledge of the risk posed by the defect; and (4) the defect caused Fowler's damages. *Trayanoff v. Omni Hotels Mgmt. Corp.*, 408 So. 3d 221, 227 (La. Ct. App. 2024) (collecting cases), *writ denied*, 404 So. 3d 654 (La. 2025). "A plaintiff's failure to prove even one of these factors will defeat his or her negligence claim." *Id.*

Relevant here is the first factor: custody. "Custody, distinct from ownership, refers to a person's supervision and control (garde) over a thing posing an unreasonable risk of harm." *Nedley v. City of Alexandria*, 405 So. 3d 1177, 1180 (La. Ct. App. 2025) (citation omitted). "And the test for determining custody or control is 'whether the defendant had the right of direction or control over the thing and what, if any, benefit the defendant derived from the thing.'" *Id.* (citation omitted).

H&M argues that pursuant to the above standards, they did not have custody of the dumpster area at the time Fowler was injured.[38] Specifically, H&M argues they did not exercise control or direction over the dumpster area because, before Fowler's accident, they only performed "infrequent clearing and disposal of debris" at the site.[39]

---

[38] [Doc. No. 42-1, pp. 14–15].
[39] [Id. at p. 14].

Fowler contends that H&M's reliance on their contractual and business formalities is misguided, and that H&M admitted to maintaining the paper mill's grounds.[40] Fowler also makes a plethora of other arguments to suggest there are factual disputes at issue.[41] None of the additional arguments are relevant.

H&M cites to Nelson's and Ferguson's affidavits, where they state that at the time Fowler was injured, H&M did not perform daily, frequent, routine work at the dumpster area, which would make them have control or direction over that site.[42] Fowler presents nothing to rebut this evidence. Nor does he provide any evidence suggesting H&M created the allegedly unsafe conditions. Worst for Fowler, however, is his own deposition testimony where he stated WestRock once came in and fixed the dumpster area, which solidifies the finding that WestRock—not H&M—exercised control and, therefore, custody over the dumpster area. Accordingly, the Court concludes Fowler cannot prove H&M exercised custody over the dumpster premises, so Fowler's premises liability claim also fails. As such, H&M's Motion is **GRANTED** as to that claim.

To sum, the Court finds there are no material facts at issue on any of Fowler's claims against H&M—negligent hiring, training, and supervising; negligence; and premises liability—and that H&M is entitled to judgment as a matter of law on each claim. So, the Court grants H&M's Motion in its entirety.

---

[40] [Doc. No. 44, pp. 4, 5].
[41] [Id. at p. 6].
[42] [Doc. No. 42-6, ¶ 3]; [Doc. No. 42-10, ¶¶ 2–3].

### III.   Conclusion

For all these reasons,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that H&M's Motion for Summary Judgment [Doc. No. 42] is **GRANTED**, and Fowler's claims against H&M are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 16th day of March 2026.

_____

TERRY A. DOUGHTY

UNITED STATES DISTRICT JUDGE