**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **KALEB FOWLER** | **CASE NO. 3:23-CV-01525** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **WESTROCK CP L L C ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 62] filed by Defendant, WestRock CP, L.L.C. ("WestRock"). Plaintiff, Kaleb Fowler ("Fowler") filed an Opposition to WestRock's Motion [Doc. No. 65], and WestRock filed a Reply [Doc. No. 67].

For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.

## I. Background

This is a worksite-injury case arising from an accident at WestRock's paper mill in Hodge, Louisiana.[1] In 2016, WestRock contracted with Waste Connections of Louisiana, Inc. ("Waste Connections") to provide waste-management services.[2] Their agreement designated Waste Connections as an independent contractor.[3] Waste Connections owned the dumpsters used in its operations.[4] Waste Connections

[1] [Doc. No. 62-4, Fowler Dep. 81:1–84:8; Doc. No. 62-3, p. 1].
[2] [Doc. No. 62-3, p. 1].
[3] [Id. at p. 4].
[4] [Id. at pp. 7-8].

employed Fowler to exchange dumpsters throughout the mill.[5] Fowler identified a Waste Connections employee as his immediate supervisor.[6] WestRock employee Dusty McGehee ("McGehee") nevertheless occasionally directed Fowler where to place dumpsters.[7]

Some dumpsters drained water into a staging area, contributing to muddy conditions.[8] The movement of heavy dumpsters and trucks also created holes and ruts in the ground.[9] Fowler knew of these conditions and had photographed them before his accident.[10] Fowler discussed the mud and ruts with McGehee, who told him WestRock was trying to address them.[11] Fowler also testified that WestRock previously arranged to have the area scraped, covered with crushed concrete, and leveled.[12] Following those repairs, Fowler initially declined to return to the staging area because it remained too muddy.[13]

Waste Connections employee Donald Boley ("Boley") explained that WestRock personnel sometimes used WestRock equipment to reposition dumpsters.[14] Boley also stated that holes and low spots in the yard could fill with water, making them difficult to see.[15] Former Waste Connections driver Maurice Harvey ("Harvey") stated that WestRock determined where dumpsters were staged and that Waste Connections

5 [Doc. No. 62-4, Fowler Dep. 37:6–24].
6 [Id. at 42:12–19].
7 [Id. at 46:8–22].
8 [Id. at 44:7–45:11].
9 [Id. at 67:4–24].
10 [Id. at 55:8–59:3; Doc. No. 62-5].
11 [Doc. No. 62-4, Fowler Dep. 46:20–47:2].
12 [Id. at 69:13–71:7].
13 [Id. at 72:15–73:12].
14 [Doc. No. 65-3, Boley Aff. ¶¶ 15–19].
15 [Id. ¶ 13].

could not relocate the staging area without WestRock's approval.[16] Waste Connections employees were required to enter the staging area to service the dumpsters.[17] Harvey also states that Waste Connections employees had complained to WestRock about mud, ruts, and standing water before the accident.[18]

On December 17, 2021, Fowler was assisting Boley with a dumpster exchange.[19] Boley described the staging area that day as muddy, wet, rutted, and uneven.[20] After attaching a cable to a dumpster, Fowler turned to walk toward his truck.[21] He selected a spot that appeared dry, but water seeped from the ground when he stepped on it.[22] His left foot slipped and turned, causing him to fall.[23] Fowler testified that his foot remained on top of the ground rather than becoming stuck in mud.[24] He further testified that the fall injured his left ankle, left knee, neck, and left shoulder.[25]

Subsequently, WestRock directed H&M Construction Company, LLC ("H&M") to arrange for the staging area to be filled and leveled.[26] Fowler sued WestRock and H&M, asserting claims for negligent supervision and maintenance of unsafe

[16] [Doc. No. 65-2, Harvey Aff. ¶¶ 5–9].
[17] [Id.]
[18] [Id. ¶¶ 18–21].
[19] [Doc. No. 62-4, Fowler Dep. 80:22–81:3].
[20] [Doc. No. 65-3, Boley Aff. ¶¶ 24–25].
[21] [Doc. No. 62-4, Fowler Dep. 81:4–21].
[22] [Id. at 81:17–82:5].
[23] [Id. at 81:24–84:8].
[24] [Id.].
[25] [Id. at 8:1–17].
[26] [Doc. No. 65-4, Nelson Aff. ¶ 4].

premises.[27] The Court granted summary judgment to H&M.[28] WestRock now moves for summary judgment dismissing Fowler's remaining claims.[29]

The issues have been briefed, and the Court is prepared to rule.

## II. Standard of Review

Courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *In re Genesis Marine*, LLC, 164 F.4th 448, 453 (5th Cir. 2026) (quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986)). And a dispute about a material fact "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). Put differently, courts must grant summary judgment against a party who does not—or cannot—show "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The movant must first point to "particular parts of materials in the record," such as depositions, documents, electronic information, affidavits, interrogatories, etc., to show there is no genuine dispute of material fact. FED. R. CIV. P. 56(c)(1)(A). Once the movant does so, the burden shifts to the nonmovant who "must go beyond

---

[27] [Doc. No. 1-1, ¶¶ 7–11].
[28] [Doc. No. 46].
[29] [Doc. No. 62].

his pleadings and designate specific facts showing that there is a genuine dispute of material fact for trial." *Clark v. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 659 (5th Cir. 2025) (citing *Celotex*, 477 U.S. at 324). The nonmovant cannot "defeat summary judgment with" metaphysical doubts as to the facts, "'conclusory allegations,' 'unsubstantiated assertions,' or 'only a scintilla of evidence.'" *In re Genesis Marine*, 164 F.4th at 453 (collecting cases).

Finally—and most importantly—when resolving summary judgment motions, "courts may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes" and must resolve all ambiguities and draw all permissible inferences "in favor of the non-moving party." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation modified) (citing *Anderson*, 477 U.S. at 255).

In this diversity case, Louisiana substantive law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

## III. Analysis

WestRock seeks to dismiss Fowler's claims of negligent hiring, training, and supervision, ordinary negligence, and premises liability. The Court first addresses the governing duty-risk framework and Fowler's ordinary-negligence claim. It then considers negligent hiring, training, and supervision, followed by premises liability.

### A. Applicable Law

Louisiana Civil Code articles 2315 and 2316 govern claims for ordinary negligence, while articles 2317 and 2317.1 govern liability for defective things in a defendant's custody. *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 472–73 (La. 2023).

Both theories employ the duty-risk analysis, requiring proof of (1) a duty, (2) breach of that duty, (3) cause-in-fact, (4) scope of duty, and (5) damages. *Id.* at 473.

A property owner or custodian generally has a duty to maintain reasonably safe premises and to correct or warn against unreasonably dangerous conditions. *Id.* Whether the defendant breached that duty depends on whether the complained-of condition presented an unreasonable risk of harm. *Id.* at 474.

To determine whether a condition presents an unreasonable risk of harm, courts apply a risk-utility balancing test considering: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the condition's obviousness and apparentness; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities, including their social utility or inherent danger. *Id.* at 474. No single factor is dispositive; the court considers the factors together to determine whether the condition presented an unreasonable risk of harm. *Id.* at 474–78.

Summary judgment is appropriate when, considering the evidence in the light most favorable to the nonmoving party, reasonable minds could only agree that the condition was not unreasonably dangerous. *Id.* at 478.

**B. Ordinary Negligence**

Ordinarily, a principal has no duty to provide an independent contractor with a safe workplace. *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 730–32 (5th Cir. 2021). An exception exists where the principal affirmatively assumes that duty or creates the hazardous condition. *Id.* at 732–33. Here, Fowler's claim concerns WestRock's own alleged failure to maintain the staging area, rather than its

supervision of Waste Connections' operations. The Court therefore considers whether WestRock may be liable for its own negligence concerning the premises.

Fowler alleges that WestRock negligently created or permitted an unsafe condition in the staging area and failed to remedy it.[30] WestRock contends that the muddy condition was open and obvious and therefore did not present an unreasonable risk of harm.[31]

The Court applies the four risk-utility balancing test factors.

First, the utility of the condition. The staging area facilitated WestRock's waste-removal and recycling operations.[32] Some dumpsters were designed to retain solid waste while allowing water to drain before transport.[33] Although those operations served a useful purpose, the resulting accumulation of mud, water, and ruts had no apparent independent utility. Accordingly, this factor does not weigh heavily in either party's favor.

Second, the likelihood and magnitude of harm. This factor considers the probability that a condition will cause injury, the potential severity of that injury, and whether the danger is open and obvious. *Farrell*, 359 So. 3d at 474–75. Relevant considerations include the condition's size, context, location, and accident history. *Latour v. Steamboats, LLC*, 371 So. 3d 1026, 1036 (La. 2023). An obvious danger generally presents a lower likelihood of injury because a reasonable person can recognize and avoid it. *Farrell*, 359 So. 3d at 475. Here, the staging area's recurring

---

30 [Doc. No. 22, ¶ 10].
31 [Doc. No. 67, pp. 1–2].
32 [Doc. No. 62-4, Fowler Dep. 36:23–38:2].
33 [Id. at 63:20–64:21].

mud and ruts exposed workers to a risk of slipping. Fowler testified that water drained from the dumpsters and that their weight and movement created ruts in the ground.[34] Waste Connections employees had to enter the area to service dumpsters.[35] Thus, unlike a hazard situated outside an ordinarily traveled area, this condition was regularly encountered by workers performing their duties. On the other hand, the general muddy condition was apparent. Fowler knew of the mud and ruts, had photographed them, and previously declined to use the area because it remained too muddy.[36] However, Fowler testified that the particular spot where he stepped appeared dry and that water emerged only after he placed his weight on it.[37] The Louisiana Supreme Court has made clear that a plaintiff's subjective awareness does not determine whether a condition is open and obvious. *Farrell*, 359 So. 3d at 478–79. Moreover, Louisiana courts applying *Farrell* have denied summary judgment where the evidence permitted reasonable disagreement about the danger posed by a wet or slippery surface. *Tregre v. BIS Servs., LLC*, 23-124, p. 10 (La. App. 5 Cir. 10/4/23), 375 So. 3d 1030, 1037. Although the general muddy condition was apparent, Fowler's testimony that the ground appeared dry before becoming slippery underfoot permits a reasonable jury to find that the likelihood of injury was greater than the surface's appearance suggested. This factor does not weigh heavily in either party's favor.

[34] [Doc. No. 62-4, Fowler Dep. 44:7–45:11, 67:4–24].
[35] [Doc. No. 65-2, Harvey Aff. ¶¶ 5–9].
[36] [Doc. No. 62-4, Fowler Dep. 55:8–59:6, 72:15–74:12].
[37] [*Id.* at 81:17–82:5].

Third, the cost of prevention. WestRock previously arranged to have the staging area scraped, covered with crushed concrete, and leveled.[38] Those repairs were not immediately successful: Fowler testified that the area remained too muddy to use and that he continued working in a temporary staging area.[39] Although WestRock's efforts demonstrate that corrective measures were attempted, the record does not establish their cost or establish their potential effectiveness at preventing Fowler's injury. Accordingly, this factor does not conclusively favor either party.

Fourth, the nature of Fowler's activities. Fowler was exchanging dumpsters as part of his employment when he fell.[40] The activity served a legitimate purpose, and the evidence indicates that Fowler's work required him to enter the staging area.[41] Unlike a person who voluntarily enters a visibly hazardous area for an unrelated purpose, Fowler encountered the condition while performing his assigned duties. This factor favors Fowler.

Considering these factors together, the Court cannot conclude that reasonable minds could only find the staging area reasonably safe. The general muddy condition was apparent, but the record permits reasonable disagreement about whether the unstable and slippery ground presented an unreasonable risk to workers required to traverse it. See *Farrell*, 359 So. 3d at 474, 478. The record also contains evidence that WestRock knew of the recurring condition and previously arranged repairs.[42]

---

38 [Id. at 69:20–70:6].
39 [Id. at 72:15–73:12].
40 [Id. at 80:22–81:21].
41 [Doc. No. 65-2, Harvey Aff. ¶¶ 5–9].
42 [Doc. No. 62-4, Fowler Dep. 46:20–47:15].

Fowler's testimony connects the slippery ground to his fall.[43] Viewing this evidence in Fowler's favor, genuine disputes of material fact remain concerning WestRock's alleged negligence. Summary judgment on Fowler's ordinary-negligence claim is therefore denied.

### C. Negligent Hiring, Training, and Supervision

Under Louisiana law, a negligent hiring, training, or supervision claim requires a sufficient connection between the employment relationship and the employee's tortious conduct. *Brown v. City of Alexandria*, No. 17-CV-0798, 2019 WL 1119578, at *4–5 (W.D. La. Mar. 8, 2019).

Fowler does not dispute the standard applied in *Brown* or contend that a WestRock employee used his employment to commit a tort against him.[44] Instead, Fowler maintains that WestRock is directly liable for its own conduct concerning the staging area's condition.[45] Fowler identifies no evidence sufficient to establish a distinct negligent-hiring, training, or supervision claim. In particular, Fowler identifies no WestRock employee whose hiring, training, or supervision was deficient, nor any resulting employee misconduct that caused his injuries.

Accordingly, summary judgment on these claims is granted.

### D. Premises Liability

Under Louisiana Civil Code article 2317.1, the owner or custodian of a defective thing is liable only if the defendant knew or should have known of the defect,

---

[43] [Id. at 81:17–84:8].
[44] [Doc. No. 65, pp. 20–21].
[45] [Id.].

the resulting damage could have been prevented through reasonable care, and the defendant failed to exercise that care. La. Civ. Code art. 2317.1.

To establish custody, or *garde*, courts consider whether the defendant had the right of direction and control over the thing and whether the defendant derived a benefit from it. *Dupree v. City of New Orleans*, 765 So. 2d 1002, 1008–09 (La. 2000). More than one party may possess *garde* of the same thing. *Id.* at 1009. Ownership creates a rebuttable presumption of *garde*. *Doughty v. Insured Lloyds Ins. Co.*, 576 So. 2d 461, 464 (La. 1991).

WestRock argues that Waste Connections controlled the dumpster operations that created the muddy conditions.[46] But custody of the dumpsters is distinct from custody of the ground on which they were placed. Harvey testified that WestRock designated the staging area and that Waste Connections could not relocate it without approval from WestRock.[47] Boley testified that WestRock employees sometimes used WestRock equipment to reposition dumpsters.[48] Fowler also testified that WestRock previously arranged repairs to the staging area.[49]

WestRock's ownership creates a presumption of custody, and the evidence of its involvement in the staging area's location and maintenance further supports a finding of *garde*. The Court therefore cannot conclude that WestRock lacked custody of the staging area.

---

[46] [Doc. No. 62-2].
[47] [Doc. No. 65-2, Harvey Aff. ¶¶ 5–6].
[48] [Doc. No. 65-3, Boley Aff. ¶¶ 15–19].
[49] [Doc. No. 62-4, Fowler Dep. 69:13–71:7].

The remaining requirements likewise present factual disputes. As explained above, a reasonable jury could find that the surface presented an unreasonable risk of harm. Harvey testified that Waste Connections employees complained to WestRock about the muddy and rutted conditions before Fowler's accident.[50] Fowler testified that WestRock had previously arranged repairs.[51] This evidence could support findings that WestRock knew of the alleged defect and had the ability to take corrective measures.

Finally, Fowler testified that his foot slipped when water emerged from the ground under his weight.[52] A reasonable jury could find that the alleged defective condition caused his injuries.

Accordingly, genuine disputes of material fact remain concerning WestRock's custody of the staging area, the existence of an unreasonable risk of harm, its knowledge of that risk, and its failure to exercise reasonable care. Summary judgment on Fowler's premises-liability claim is denied.

## IV. Conclusion

For the reasons set forth above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that WestRock CP, LLC's Motion for Summary Judgment [Doc. No. 62] is **GRANTED IN PART** and **DENIED IN PART**.

---

[50] [Doc. No. 65-2, Harvey Aff. ¶¶ 18–21].
[51] [Doc. No. 62-4, Fowler Dep. 69:13–71:7].
[52] [Id. at 81:17–84:8].

**IT IS FURTHER ORDERED** that the Motion is **DENIED** as to Fowler's claims for ordinary negligence and premises liability.

**IT IS FURTHER ORDERED** that Fowler's alternative request to defer consideration of summary judgment to permit additional discovery under Federal Rule of Civil Procedure 56(d) is **DENIED AS MOOT** because the Court denies summary judgment on his ordinary-negligence and premises-liability claims based on the existing record.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motion is **GRANTED** as to Fowler's claims for negligent hiring, training, and supervision, and those claims are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 21st day of October, 2026.

Terry A. Doughty
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE